JOHN WRIGHT, plaintiff in error, *vs.* ROBERT T. McNEELY, defendant in error.

### *Error to Logan.*

Where a bill in chancery is filed, setting up a parol agreement, that the complainant was to be permitted to redeem lands sold at sheriff's sale, after the time allowed by law for its redemption should expire, the Court will not enforce a specific performance of the agreement, unless the complainant avers and proves that he tendered the money within a reasonable time, and keeps his tender good.

Although no definite time was fixed by the agreement, within which the redemption money was to have been paid, yet the law requires that it should be paid within a reasonable time, even if a tender of the money had been made and the money brought into Court. Here the sale of the land took place in October, 1846, and the bill was filed in February, 1848. Held not to be within a reasonable time.

A warrant of attorney to confess a judgment, is of itself a sufficient consideration to support an agreement.

This was a suit in chancery, filed February 24, 1848. The bill charges that on the 30th day of August, A. D. 1845, the sheriff of Logan county sold Wright's lands to one Samuel Hill, for the sum of $353 27, being the amount of principal, interest and cost due on a judgment and execution in favor of said Hill

31

against said Wright. The said lands were sold *en masse*, though they were susceptible of more advantageous sale by parcels; that the lands were really worth at least eighteen hundred dollars, and that Wright had no notice of the sale being made *en masse* until a few days before filing his bill; that Wright, being indebted to said McNeely and one William G. Johnson, they, on the 5th day of June, A. D. 1846, obtained a judgment against said Wright, on a *cognovit* in the Logan Circuit Court, for the sum of $294 41; that said McNeely is the son-in-law of said Wright, and that said Wright was induced to give said cognovit upon the express promise of said McNeely, made on behalf of himself and said Johnson, that whenever they, as judgment creditors, would redeem said lands from said sale to said Hill, and hold themselves as security for such redemption money, and then own said debt to be conveyed to said Wright whenever he should pay them said sums of money; that said McNeely and Johnson did redeem said lands; that McNeely has since purchased Johnson's interest; that Wright has offered to pay as aforesaid to McNeely, and demanded a conveyance, but that McNeely fraudulently refuses, claiming the land as his own of right, and still holding his judgment against Wright, and that he had originally intended to defraud Wright. The bill also charges that Wright had been in possession of the land by his tenant up to the time of filing the same. Some allegations, and a prayer for an injunction thereon, are all unnecessary to be stated. The bill makes said McNeely and Hill defendants, waives oaths to their answer, and prays that upon tender of the redemption money and interest, and the amount due on McNeely's own judgment, McNeely be compelled to convey to Wright, and enter his judgment satisfied, and adds the general prayer. McNeely's answer admits the sale on Hill's execution, but does not know whether made *en masse* or in parcels; admits the judgment by cognovit and redemption under it; that he is Wright's son-in-law; that he has purchased Johnson's interest; that he refuses to convey to said Wright, and refuses to enter satisfaction of his judgment. Denies that the land was worth any thing near what is charged in the bill; that he ever promised to hold the land in security as charged in the bill; that he procured Wright to execute the cognovit, or any other consideration than as a mere favor to Wright in the saving of costs; that Wright has been in

possession as charged; that Wright has ever offered to pay as alleged. This answer states that McNeely did, in mere favor, and without consideration, promise Wright that he might redeem the land at any time before the spring of 1847, and that he would have kept the promise had the offer of the money been made; and it claims that the tenant on the lands had, before the filing of the bill, attorned to McNeely. Hill never answered, and Wright filed a general replication to McNeely's answer.

Evidence for complainant:

A. A. Rankin deposes that "R. T. McNeely stated to me he was going to become a judgment creditor of John Wright, in Logan county, and levy on the lands that Hill had sold, and have them sold under the execution, so as to give Wright longer time to make further arrangements, and befriend him in the operation, so as to keep the lands from being sacrificed; and his whole object was to befriend Wright, and to put his own debt in such a situation as to secure himself, and also to befriend Wright; for there was an understanding between him and Wright how the matter should be managed."

James Taylor says: "After the judgment was obtained, R. T. McNeely told me he had proposed to John Wright, if he would confess a judgment in his favor, he would redeem the land that had been sold by Hill in Logan county, as judgment creditor, and give Wright further time, as he was afraid Wright might not redeem the land, and he would probably lose his debt, and as he had a partner, he felt it his duty to secure the debt if possible. The reason he assigned for not bidding off the property for the amount of both judgments, was to save the sheriff's commissions. He told me it was his intention to bid the land off for both judgments, when he went to Logan county, but when he got there he found he could save several dollars by bidding it off at Hill's judgment, so it would save the money to Wright if he redeemed the land. After McNeely's return from St. Louis, he told me that John Wright had taken legal steps, and as he was so fond of law, he would let the matter be settled by the law, and he would now have the judgment in his and Johnson's favor collected, since he had been deviled so much. He was so kept here on expenses and away from business, that the course that Wright had taken was injuring him, and he would have all that the law allowed him."

William McNeely says: "Tilton (R. T. Mc.) told me that he proposed to John Wright to confess a judgment in his and Johnson's favor, in consequence of the family connexion that existed—John Wright being his father-in-law—and it would save cost; that he would give him further time to redeem it, without naming any definite time. At a subsequent conversation, that John Wright came and asked him how long he would give him to redeem the place; he said he would give him till next spring from the time he bid the land off, and if he did not get the money then, they would have to take the place, and do the best they could with it. John Wright said to me, 'you may say to your brother that if he will settle according to the contract, I think the money can be got.' I delivered the message. McNeely told me that there was no contract between them."

Joseph L. Price gives a long deposition, the substance of which is, that R. McNeely, in the spring of 1847, claimed the land; said Wright had let his time run out; admitted that he had originally intended to satisfy his and Johnson's judgment, but as Wright was now giving him trouble, he would not do it unless Wright's wife would relinquish dower.

Samuel G. Martin, the tenant in possession of the land, gives a long deposition, the substance of which is, that he got possession of and by contract with Wright, and has held it ever since; that he thinks he is still Wright's tenant, but is not very certain; that McNeely and his agent have talked to him about renting of them, but he made no particular contract, though he did some repairs on the place at their suggestion; that McNeely came on the place with a hand, and did some work; and that he, the tenant, considers the land worth seven dollars per acre.

Stephen Price has known the farm since 1841. In 1846 made up his mind to offer Wright $1,500 for two hundred acres of it, but learning there was another eighty acre tract, he was not able to buy that, too, and so never made any offer. Considers the *home* farm one of the best situations in the neighborhood.

David Pence knows the farm, and believes it was worth in 1846, and now, seven dollars per acre. Considers it the best farm to produce in the neighborhood.

Colby Knapp says, in substance, that McNeely's agent, in company with S. G. Martin, employed witness to sell some rent corn on the place, and that Martin agreed to deliver it to who-

ever might buy it; that after McNeely, the agent, left, I asked Mr. Martin who he recognized as his landlord. He replied, as near as I can recollect, in the following words : "I hardly know myself, but the man seems to come it over me." That the corn was not in fact sold by witness.

James Taylor's deposition, retaken by defendant, says the same, in substance, as before. "In the spring of 1847 heard McNeely say that he had given Wright time enough to redeem the land ; that he would take the land and do the best he could with it."

William McNeely's deposition retaken by defendant, amplified some, but substantially as before. Knows the land, and does not think it could have been sold in the fall of 1846, subject to dower, for more than $2·50 per acre. Martin told him he thought it could not be sold for more than a thousand dollars ; that he would not give the entrance for one of the eighties ; that in July or August, 1847, he, as agent of defendant, called on Martin, and made contracts with him as tenant of defendant.

The plaintiff objected to these two last depositions.

Thomas L. Harris' deposition proves nothing of importance.

George N. Miles knows the land ; has lived within twenty miles of it for a long time ; thinks it not worth more than three dollars per acre, and fifty cents per acre less if subject to dower.

N. M. Whitaker knows the farm *generally,* but not particularly; thinks it worth three or four dollars per acre.

Berryman Boughan has known the land seventeen years, and considers it worth seven dollars per acre.

William G. Johnson gives a long deposition, showing the particulars of the dissolution of partnership between McNeely and himself, but containing nothing of importance to the case.

James Primm examined by defendant, as to a conversation with Wright, sustains the bill as to the arrangement with Mc-Neely, about confessing judgment, redeeming, &c.; does not know much about the land, but thinks it might be bought for two dollars, cash, per acre. The sheriff's return on Hill's execution, and also on McNeely's execution, show that the land was sold *en masse,* in both instances.

The cause was submitted to the Court below on the pleadings and proofs, on which the Court dismissed the bill. It is assigned for error : 1. Because the Court decided against the evidence.

2. Because the Court decided against law, equity and evidence. 3. Because the Court erred in dissolving the injunction. 4. Because the Court erred in not granting relief sought, and in dismissing complainant's bill. This bill was heard before Mr. Justice Treat, at September term, 1848.

LINCOLN & HERNDON, for plaintiff in error:

First, it is proved that, on valid consideration, McNeely contracted to allow Wright a reasonable time to redeem the lands, and that he afterwards refused to do so; or if not,

Second, that he fraudulently inveigled and lulled Wright to let slip his opportunity of redeeming from Hill; or if not,

Third, that the sheriff's sale to McNeely, on his redemption from Hill being made *en masse*, was fraudulent, or, at least, irregular, and should be set aside. 1 Gilman, 435; 4 ibid, 389; 5 ibid, 171; Illinois Statutes, of " Judgment and Execution," secs. 14, 15.

S. T. LOGAN, on same side:

Defendants have not claimed the aid of the statute of frauds, and, therefore, they cannot avail themselves of it. Time is not the essence of a contract in equity. McNeely became the purchaser of the land to befriend Wright, and to save the land for Wright, as well as to save his own debt, and it was for these purposes that he induced Wright to give the cognovit; they were both to be benefitted by it. McNeely became the trustee for Wright in holding this land. This is the same in principle with the case of Ferguson *vs.* Sutphen, 3 Gilman, 547. This transaction between McNeely and Wright is in the nature of a mortgage. 7 Monroe, 480; Ethrington *vs.* Harper, 3 J. J. Marshall, 353. The conveyance, although from a third person, was to cover a loan for the benefit of Wright, to enable him to redeem the land. 6 Monroe, 121; 1 Littell's Rep., 192. McNeely got the land for a very inadequate consideration, which is to be taken as evidence that the intention of the parties was not to convey the land absolutely. The form of this contract should not control the substance of it; which was, that McNeely should redeem for Wright's benefit, and hold the land as security for the redemption money, and of his, McNeely's, own debt.

BROWN & YATES, for defendant in error:

1. The evidence does not establish the contract set out in the bill. In order to ascertain the intention of the parties, the Court will look at their situation and the whole transaction. Frink *vs.* Cole, 5 Gilman, 339. Evidence to establish a contract, not recognized by the paper title, should be clear and explicit. 2 Fonblanque's Eq., 41, and note; 2 W. C. C. Rep., 398; 8 Serg. & R., 493 ; 1 Bibb, 610, and authorities therein referred to. Parol evidence received with great caution. Ibid. The case is more loose than that in 5 J. Ch. Rep., 11, 12, 13; which was dismissed. If the case be loose and inconclusive, the bill should be dismissed. Webb *et al. vs.* Alton Marine and Fire Insurance Co., 5 Gilman, 226. 2. Complainant must recover, if at all, according to the allegations of bill; and if the *allegata et probata* do not agree, the bill will be dismissed. " Allegation of payment when due, is not sustained by proof, at a subsequent and remote day." 1 Scammon, 385–6; McKay *vs.* Bissett, 5 Gilman, 504, 505. 3. Bill should be dismissed, because no proof of tender of money, as alleged—the tender being necessary. Smith and others *vs.* Sackett and others, 5 Gilman, 542. 4. Where money is tendered, it should be brought into Court, in the case of a bill to enforce the specific execution of a contract. 5 Gilman, 547 ; Doyle *vs.* Teas, 4 Scam., 267 ; 18 John., 559, 570. 5. An averment " of readiness to pay whatever shall be decreed, is an all important averment." There is no such averment in the bill. 18 John., 560 ; 1 Fonb. Eq., 283. 6. Promise made by McNeely to Wright, after purchase, that he would give him until spring to redeem, cannot help the case: because, first, complainant stands on the allegations of the bill, and not upon the statements of the answer, and must recover on the bill ; second, because Wright did not so redeem or offer to redeem; third, because the promise was without consideration. 2 Marsh., 57 ; fourth, because the promise is to be looked at as a conditional sale, and it must have been complied with by paying the money within the time. 2 Marsh., 57. 7. The Court properly refused the special relief prayed, because the promise of McNeely, whenever made, was without consideration, and it is a stern rule of equity, that it will not enforce the specific execution of a contract, unless it is based on some fair and valuable consideration. 5 Gilman, 225, and authorities referred to in the

brief in that case. 8. A contract made by a judgment debtor, with a bidder at sale under execution, to buy in property, and take title, and hold it in trust for him, is against the policy of the law, and will not be enforced in chancery. 2. Marsh., 57. 9. There is no proof of fraud; which is never presumed. 10. The sale to Hill cannot be set aside, under this bill. To do so, would be rendering a decree inconsistent with the structure of the bill, and inconsistent with the special prayer. Cooper's Eq. Plead., 14. A bill to recover, necessarily admits the validity of the sale. 3 Gilman, 40. Relief inconsistent with the specific relief prayed for, will not be granted under general prayer. 18 John., 562; Cooper's Eq. Pl., 14. To obtain relief under the general prayer, inconsistent with special prayer of relief, the general prayer should be in the disjunctive. 2 Paige, 396; 1 Hawke's Rep., 509. 11. Wright having knowledge of sale to Hill, from the time of sale, should have redeemed or moved to set the sale aside, before the rights of third persons intervened. It was optional with Wright, admitting the irregularity of the sale to Hill, to abide by it, and if he made no move to do so, McNeely had a right to suppose that he was content to abide the sale, and he had a right to redeem, without being liable to have his title defeated by Wright afterwards. Where one or two innocent persons are to suffer, he who is in default or negligent must suffer. 12. It is only upon the ground of fraud, or that some one may have been prejudiced by a sale of real estate *en masse*, that the sale will be set aside in equity, because not sold in separate parcels. Ross *vs.* Meade *et al.*, 5 Gilman, 173. 13. The purchase by McNeely is protected, because he is a purchaser for a valuable consideration, without notice. 5 Gilman, 444; 1 ibid, 441; Rev. Stat., 302. 14. There is no allegation in the bill as to the mode, times, &c., of sale to McNeely. 15. There is no evidence in the cause as to the manner of Hill's sale or McNeely's sale. The executions, &c., copied by the clerk, constitute no part of the record.

W. Thomas, on same side :

The questions presented by the record are : 1. Was there such a contract as that stated in the bill, and if so, is the complainant entitled to a specific execution of it. 2. If there was no such contract as stated in the bill, and any contract is pro-

ven, can the party avail himself of the benefit of the contract as proven, though differing from that alleged in the bill, so as to be entitled to a decree. 5 Gilman, 514.  3. Can the Court, upon the allegations and proof, set aside the sale to Hill. .

It is insisted : 1. That the proof does not sustain the bill.  2. That the contract, as set forth in the bill, was without consideration.  3. That assuming the contract to have been proven, there is no proof of performance.  The consideration is attempted to be sustained by showing the execution of a power of attorney to confess judgment.  The Court will see, however, that judgment could have been obtained without the power of attorney.  No fact is stated, nor reason given, to the contrary.  Upon the question of consideration see 2 Story's Eq., 95, 102.  Upon the question of performance, see same authority, 81, 85, 87 ; 1 Johnson's Ch. R., 375 ; 1 Sugden on Vendors, 497, 500, 501 ; 5 Gilman, 314.  The answer denies the contract as stated in the bill, and sets out what must, in this case, be assumed to be the truth, because substantially sustained by the testimony, to wit, that defendant agreed to redeem the land as a judgment creditor, and give complainant time to redeem from him until March, 1847 ; yet it is evident from the testimony, especially that of T. L. Harris, esq., that complainant did not execute the power of attorney, with a view to this, or any other contract—he intended to redeem himself.

It ought to appear to the Court, that some offer was made, (if not tender of the money) to comply with the contract, as contended for either by complainant or defendant: the proof is, that Wright sent a message to McNeely in 1847, that if he, McNeely, would comply with the contract, his money could probably be had.  To this McNeely replied, there is no contract.  Here was no offer, no readiness, or even willingness to pay. 4 Scam., 267.  There is no evidence before the Court, as to the manner of selling by the sheriff.  Aside from the statements in the bill and answer, the only evidence of the sale, is the execution and sheriff's return, copied in the record.  Neither this execution, nor the execution in favor of McNeely, copied in the record, can be used in this Court, because they do not constitute part of the record.  Scott vs. Petty, 5 Scam., 410 ; 4 Scam., 126.  No allegation is made in the bill with respect to the sale to McNeely, nor no complaint that this sale was en masse, or that the

32

lands were not sold in parcels. Upon the question of these sales, it is insisted that, according to the statements of the bill, the complainant has no right to except; the right to relief is predicated upon the ground that McNeely purchased for complainant, and by granting the prayer of the bill, the sale is affirmed. If the sale is void, the complainant has lost nothing.

Upon a bill filed by the creditors of Wright, the Court might set aside the sales, upon being satisfied that the lands sold for less than their value, and that, by the agreement between these parties, they were sold for less than they would have brought without such agreement. All such agreements are contrary to the policy of the law.

A. LINCOLN, in reply:

Complainant has proved substantially the allegations in his bill, whereas the answer has not been sustained by proof. Therefore the complainant is entitled to relief upon his bill, whether he had the right to redeem by the first of March, or to redeem indefinitely. The authorities cited by counsel for defendant, are cases of specific performance, which require greater strictness in the construction of the agreement, and stand upon a different footing than do bills claiming to redeem property left in the hands of another as security. The latter class is assimilated to cases arising upon mortgages. The sheriff acted in lieu of Wright in giving the security, and the decision should be the same as if Wright had given the deed in person. 2 Cowen, 324. Parol proof is admissible to show the design and intention of such contracts. 1 Wendell, 433, 437; 4 John. Chan., 167. If Wright did promise to redeem by the first of March, and permitted that time to pass, still he is not deprived of his right to redeem. If once a mortgage, the agreement will always continue a mortgage, and be subject to the same rules, even though it is agreed upon its face that it should become an absolute deed. 2 Cowen, 324; 8 Mass., 159. Wright was not bound to tender the money to McNeely, because the latter had already declared he would not accept the money, if it should be tendered.

Opinion by Mr. Justice CATON:

The premises in question were sold by virtue of an execution against the complainant, in favor of one Hill, and before the

time had expired within which Wright had to redeem, he gave a warrant of attorney, upon which a judgment was confessed in favor of McNeely and Johnson, under which, as judgment creditors, they redeemed the premises from the sale which had been made under Hill's execution. McNeely and Johnson then issued an execution upon their judgment, under which the premises were again offered for sale, when they bid the amount which they had paid for the redemption of the premises, and there being no higher bid, the premises were struck off to them, and they took a sheriff's deed, according to the provisions of the statute. Subsequently, Johnson transferred his interest in the lands to McNeely.

This bill was filed by Wright, alleging these facts, and that McNeely agreed with him, at the time he applied for the warrant of attorney, that if he would execute it, they, McNeely and Johnson, would redeem the lands from the former sale, and hold them as security for the amount of their judgment, and the amount of redemption money which they should pay, and that they would allow the complainant to redeem the premises by paying the amount of the redemption money and the last judgment; and that upon such redemption they would convey the premises to him. The bill avers an offer to pay the money, and that McNeely refused to receive it, or to make the conveyance, and that he threatens to issue execution and collect the full amount of the judgment in favor of himself and Johnson. The bill seeks a specific performance of the agreement, and to have the judgment declared satisfied.

The defendant in his answer denies the making of the agreement, but does not set up the statute of frauds, and he insists upon his right to collect the judgment.

We are satisfied that an agreement is proved, substantially as charged in the bill, but there is an insuperable 'objection to a decree for its specific performance. The complainant has totally failed in his attempt to prove a tender of the money; nor has he brought it into Court as he should have done, even if he had proved a tender. This was indispensable, for we consider this simply as an agreement for the conveyance of land. Doyle *vs.* Teas, 4 Scammon. Even should this transaction be considered in the nature of a mortgage, the complainant does not show himself entitled to the relief sought; for he not only fails

to prove a tender of the money, but he does not expressly make a present offer to pay it; and there are no existing circumstances shown, superseding the necessity of such tender and offer, as was the case in Smith *vs.* Sackett, 5 Gilman, 534. But, as before remarked, without going into a discussion of the subject at length, we do not consider that, by the true construction of this agreement, it should be held to be a mortgage. Although no definite time was fixed by the agreement for the payment of the money, yet the law would require that it should be paid within a reasonable time. Here we think was an unreasonable delay, when all the circumstances are considered, even if a tender had been made, and the money brought into court at the time this bill was filed. The second sale took place in October, 1846, and this bill was not filed until February, 1848. The primary object of the defendant was to secure the debt due to himself and Johnson; in order to do which he was willing to make a considerable advance, to the manifest embarrassment of his mercantile business. The delay was longer than either party could have contemplated at the time, and we think beyond what should be tolerated.

It was insisted upon the argument that the agreement was entirely voluntary, and without any sufficient consideration. In this, however, we cannot concur. The warrant of attorney to confess the judgment was of itself a sufficient consideration to support the agreement. Besides, at the time the agreement was entered into, a considerable time remained within which Wright himself might have redeemed; and this he suffered to elapse without redeeming, as the agreement implied that he should.

We think, however, by a fair construction of the agreement, the defendant ought not to be allowed to collect the judgment of McNeely and Johnson against Wright; although it is not shown that the agreement stipulated, in express terms, that McNeely and Johnson should bid the amount of their judgment, besides the amount of the redemption money, upon the second sale; yet that may be fairly implied as one of its provisions. By the agreement, the complainant had the right to redeem from the second sale, by paying the amount of the judgment, as well as the first redemption. This shows that both parties intended that the last judgment should be satisfied by the last sale. The reason which McNeely assigned for not bidding more than the

amount paid to redeem from the sale to Hill, was, that he might save Wright the commissions to which the sheriff would have been entitled, upon the increased bid.    This manifests an intention on the part of McNeely, at that time, to consider that as done which should have been done.    It was the declared intention of McNeely to secure the last judgment; and as the complainant was to have the privilege of redeeming from the sale to him, this could only be done by either actually or equitably bidding the amount of that judgment.    McNeely should not be allowed now to say that he did not bid as much as he agreed to, and that hence that judgment is not satisfied, and as the object of McNeely in omitting to bid the increased amount, was to save Wright from the payment of costs, the latter may be estopped from complaining that the increased bid was not actually made; but then he has a right to insist upon its being considered as done.    Had Wright made out such a case as would authorize him to redeem under the agreement, McNeely would hardly be satisfied if we did not require him to pay the amount of this judgment, as well as of the original redemption money. If Wright had redeemed, or should now be allowed to redeem, by paying both amounts, this judgment would undoubtedly be satisfied, and the same consequences must follow where the defendant keeps the land, which he seems anxious to do, instead of receiving the money.    It may be said, that if Wright had redeemed under the agreement, he would thereby have paid the judgment; but that is not so, for the money would not have been paid under the obligation created by the judgment, but under the right existing in the agreement.    It cannot be doubted that both parties expected, at the time the agreement was made, that Wright would redeem under it; especially when we remember that the land was worth considerably more than double the amount which he was to pay in order to redeem; and this fact ought to reconcile McNeely to a decree restraining him from collecting that judgment.

So much of the decree of the Circuit Court as dismisses the the bill, is reversed, with costs; and so much of said decree as adjudges each party to pay his own costs, is affirmed; and a decree will be entered here, declaring said judgment satisfied.

*Decree modified.*